IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-00497-NYW

SAMUEL WELLS,

    Plaintiff,

v.

INSTITUTE FOR SHIPBOARD EDUCATION d/b/a SEMESTER AT SEA,

    Defendant.

---

## ORDER ON MOTION FOR TEMPORARY RESTRATINING ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order (the "Motion") filed on February 23, 2023. [Doc. 2]. This Court held a hearing on the Motion on February 23, 2023. For the reasons set forth herein, the Motion for Temporary Restraining Order is respectfully **DENIED**.

## BACKGROUND

The following facts are drawn from the verified Complaint and the attached exhibits. [Doc. 1; Doc. 12]. Plaintiff Samuel Wells ("Plaintiff" or "Mr. Wells") initiated this civil action on February 23, 2023 and filed the instant Motion the same day. [Doc. 1; Doc. 2]. In his Complaint, Plaintiff alleges that he is a "college student enrolled in the Spring 2023 school semester with Semester at Sea," which is the business name of Defendant Institute for Shipboard Education ("Defendant" or "Semester at Sea"). [Doc. at 1 ¶ 1]. Semester at Sea is a learning institution "which operates a ship . . . on which it offers college courses during semesters spent abroad." [*Id.* at ¶ 5]. Mr. Wells alleges that on or about February 12, 2023, he returned to the ship after spending

time in port in Jordan, at which time he was detained by ship security to the ship's observation room on the basis that Mr. Wells appeared intoxicated. [*Id.* at ¶¶ 9–10]. Plaintiff avers that he did not harm any person or property during the incident, did not threaten to harm any person or property during the incident, and did not interfere with academic or ship operations during the incident. [*Id.* at ¶¶ 20–23]. Plaintiff was permitted to return to his quarters "[s]everal hours later." [*Id.* at ¶ 11].

By letter dated February 17, 2023, Defendant's Assistant Dean of Students contacted Plaintiff via email requesting to have a "conference" with Plaintiff the following day to discuss the events of February 12. [*Id.* at ¶ 16; Doc. 1-3]. The February 17 letter advised Mr. Wells that:

> I have received a report that alleges your involvement on February 12, 2023 in violation of the Standards of Conduct, as found in the Voyager's Handbook and/or Student Addendum. Specifically, it alleges that you have violated the following Standards of Conduct in On-Ship (observation room):
>
> - Misuse of Alcohol
> - Failure to Comply with Directions of Officials
> - Abusive Behavior
> - Disruptive Behavior

[Doc. 1-3 at 1]. The Assistant Dean further "encourage[d] [Mr. Wells] to read the Standards of Conduct in the Voyager's Handbook available on Homeport and the Semester at Sea website, so you understand the rights and responsibilities ascribed to you in the conduct process." [*Id.* at 1–2]. Finally, the letter indicated that "[a]t the conference, I will explain the conduct process and answer your questions, review the complaint, let you review documents pertinent to the incident, and allow you to explain your understanding of what happened." [*Id.* at 2].

Plaintiff alleges that he "met with [the Assistant Dean], cooperated in her request for a 'conference,' and told her what he recalled of the Incident." [Doc. 1 at ¶ 17]. He alleges that he was not shown any documents or informed that this was a formal hearing related to the incident.

2

[*Id.* at ¶ 18]. He asserts that if he had been informed it was a formal hearing, "it would have triggered certain contractual rights under the [Semester at Sea] Handbook, including the rights to know the charges made against him and to call witnesses and have a support person with him throughout the Hearing process." [*Id.* at ¶ 19].

> Plaintiff alleges that on or about February 18, 2023, the Assistant Dean
>
> notified Plaintiff that she had been acting as a Hearing Officer, that she was conducting a formal investigation, that her 'conference' with Plaintiff on the previous afternoon was actually a formal Hearing, that she reached a formal Decision to have Plaintiff Dismissed from the Program and removed from the Ship, and that Plaintiff would be removed from the Ship if he did not depart by noon on February 24, 2023 (local time).

[*Id.* at ¶ 25; Doc. 1-4]. Specifically, in the February 18 letter, the Assistant Dean made the following findings:

- Misuse of Alcohol – Responsible
- Failure to Comply with Directions of Officials – Responsible
- Abusive Behavior – Responsible
- Disruptive Behavior – Responsible

[Doc. 1-4 at 1]. The letter further stated:

> This decision was made for the following reason(s): *When we met you admitted that, as a result of alcohol use and nicotine withdrawal, you mistreated and spoke inappropriately to several members of the [Semester at Sea] staff, ship security team, and medical staff. While you don't remember every interaction, we discussed that your actions were verbally abusive.*

Doc. 1-4 at 1]. Mr. Wells was then informed that the applicable sanction was dismissal from the program, and that the "[d]ismissal is your [sic] immediate and permanent removal from participation in the Semester at Sea program" but that

> [p]ending no further violations, you may remain on the ship until you are able to secure transportation home. Should there be any additional violations or disruption you will be required to leave the ship immediately (once in port). Once you disembark the ship you will not be allowed to re-embark. You must disembark no later than 12:00 on February 24, 2023.

3

[*Id.* at 1–2].

Plaintiff alleges that he was deprived of the hearing procedures described in the Semester at Sea Handbook, including the opportunity to call witnesses and to have a support person attend the hearing. [Doc. 1 at ¶¶ 33–39]. Pursuant to the Handbook, Plaintiff had 48 hours to appeal this decision. [*Id.* at ¶ 26]. However, Plaintiff alleges that Defendant initially refused to provide a copy of the appeal record, and due to this "intentional delay," he had fewer than 24 hours to prepare for his appeal on charges "that were not spelled out and that are based on documents he still has never seen." [*Id.* at ¶ 30]. Plaintiff was informed that his appeal was denied and that the Executive Dean had approved his dismissal on February 22, 2023. [*Id.* at ¶ 31].

According to Plaintiff, the Semester at Sea ship is currently ported in Cyprus, Greece and is scheduled to leave port on February 24, 2023. [*Id.* at ¶ 6]. Plaintiff alleges that "[u]pon information and belief, [the] Ship's security will physically remove Plaintiff from the Ship by noon, Cyprus time, leaving him stranded in a foreign country." [*Id.* at ¶ 32].

Plaintiff asserts two claims in this case, one for breach of contract and the other for defamation. [*Id.* at ¶¶ 53–71].[1] Specifically, Plaintiff alleges that "Plaintiff and Defendant's relationship is defined by several documents which create contractual obligations to each other" and that "[t]he numerous violations of the express contractual obligations by Defendant resulted in intentionally denying Plaintiff a fair Hearing." [*Id.* at ¶¶ 53, 55]. Furthermore, he asserts that Defendant has "published statements in Plaintiff's academic record stating that he" engaged in abusive conduct and has "threatened and intends to public these false and defamatory statements to the Colorado State University and to Plaintiff's home university where he has been accepted to

---

[1] Plaintiff alleges that this Court has diversity jurisdiction under § 28 U.S.C. § 1332(a), as it is between citizens of different states and the amount in controversy exceeds $75,000. [Doc. 1 at ¶¶ 1–3].

4

the graduate accounting program to pursue his master's in accounting." [*Id.* at ¶¶ 66–67]. Plaintiff requests "specific performance[] and . . . incidental and consequential damages" in his breach of contract claim and a "permanent injunction against publishing [the dean's decision], a permanent injunction against Defendant making defamatory statements against Plaintiff or his academic record, and . . . compensatory damages" for his defamation claim. [*Id.* at 8].

Mr. Wells filed his Motion for Temporary Restraining Order at 10:38 A.M. on February 23, 2023. [Doc. 2]. The case was reassigned to the undersigned at 1:45 P.M. [Doc. 8]. The Court held a hearing on the motion at 3:15 P.M., *see* [Doc. 10; Doc. 13], after which Defendant filed a Response to the Motion, [Doc. 11], and Plaintiff filed a declaration that "the factual allegations in the Complaint and Motion for Temporary Restraining Order filed in this action are true and correct." [Doc. 12]. The Court turns to the Parties' arguments below.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes the court to enter preliminary injunctions and issue temporary restraining orders. Fed. R. Civ. P. 65(a), (b). "The requirements for issuing a [temporary restraining order] mirror the requirements for issuing a preliminary injunction." *Briscoe v. Sebelius*, 927 F. Supp. 2d 1109, 1114 (D. Colo. 2013). A party seeking preliminary injunctive relief must satisfy four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015). A party seeking an injunction must demonstrate that "*all four* of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013) (emphasis in original), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief

unwarranted." *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014). "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018).

## ANALYSIS

### I.  Disfavored Injunction

"The Tenth Circuit disfavors some [types of] injunctive relief and requires 'more of the parties who request them.'" *Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1144 (D.N.M. 2020) (quoting *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019)). "There are three disfavored injunctions: (i) mandatory (rather than prohibitory) injunctions; (ii) injunctions that change the status quo; and (iii) injunctions that grant all the relief that the moving party could expect to win at trial." *Id.* "Such disfavored injunctions 'must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" *Schrier v. Univ. Of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004)).

Plaintiff submits that his Motion simply requests to maintain the status quo, and he frames his requested injunctive relief as prohibitory in nature. [Doc. 2 at 4]. However, the Court concludes that Plaintiff requests a mandatory, rather than prohibitory, injunction. A mandatory injunction affirmatively orders the non-moving party to take some action. *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1275 (10th Cir. 2022). Though Plaintiff requests a court order restraining Defendant from "taking further disciplinary or other action that interferes with Plaintiff's enrollment or ability to participate in his classes," [Doc.

6

2 at 4], the Court notes that Defendant has already dismissed Plaintiff from its program, permanently removed him from participation in the program, and required that Plaintiff "[will] be removed from the Ship" on February 24, 2023. [Doc. 1 at ¶ 25]. Indeed, Defendant informed Plaintiff by the February 18 letter that his dismissal was his "immediate and permanent removal from participation in the Semester at Sea program," which means that Plaintiff was "academically withdrawn from the Colorado State University and will receive no academic credit." [Doc. 1-4 at 1–2]. In other words, to enter an order allowing Mr. Wells to remain on the ship and prohibiting Defendant from taking any action that would "interfere[] with Plaintiff's enrollment or ability to participate in his classes" would require Defendant to affirmatively reinstate Plaintiff into its program and permit him to attend classes.[2] Thus, Plaintiff seeks a disfavored injunction, and he "must make a strong showing both on the likelihood of success on the merits and on the balance of the harms." *Colorado v. E.P.A.*, 989 F.3d 874, 884 (10th Cir. 2021) (quotation omitted).

## II.   Likelihood of Success on the Merits

The Court first discusses whether Plaintiff has established a likelihood of success on the merits on either of his two claims. *Petrella*, 787 F.3d at 1257.

***Breach of Contract***.  With respect to his breach of contract claim, Plaintiff argues in his Motion that he "has a substantial likelihood of success on the merits of his claim[] for breach of contract" because he "was denied a fair hearing." [Doc. 2 at 3]. Defendant responds that Plaintiff "fails to articulate what the alleged contract terms are, or how it was allegedly breached," and fails

---

[2] While Plaintiff may physically remain on the ship at this juncture, this is due to Defendant's voluntary decision to permit him to stay aboard: "Pending no further violations, you may remain on the ship until you are able to secure transportation home. Should there be any additional violations or disruption you will be required to leave the ship immediately (once in port). . . . You must disembark no later than 12:00 on February 24, 2023." [Doc. 1-4 at 2]. Defense counsel represented at the hearing that the Semester at Sea ship will remain in port in Cyprus until February 24, 2023, at which time it will depart for its next destination.

to "provide any 'specific facts' as to what the contract says about hearings or when they are conducted. [Doc. 11 at 2].

For a few reasons, the Court cannot conclude that Plaintiff has established a likelihood of success on his breach of contract claim. First, he has not actually identified the contract in question or alleged which specific contractual provisions he alleges Defendant has violated. *See generally* [Doc. 1 at ¶¶ 53–61]. Indeed, he asserts generally that "Plaintiff and Defendant's relationship is defined by several documents which create contractual obligations to each other." [*Id.* at ¶ 53 (emphasis added)]. But he has not clearly identified the contract or the contractual terms that he believes Defendant breached, and Plaintiff's limited assertion that he was denied a fair hearing is insufficient to establish a likelihood of success on the merits.[3]

To the extent that Plaintiff's allegations could be construed to assert that the Handbook is a binding contract between the Parties, he has not identified any facts or evidence that would permit the Court to conclude that the Handbook is an enforceable contract. *See generally* [*id.*]. To be sure, "[u]nder certain circumstances, a private university student handbook may constitute a contract between the student and the institution," *Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1325 (D. Or. 2014), and whether a student handbook amounts to an enforceable contract is a matter of state law. *See, e.g.*, *Shaw v. Elon Univ.*, 400 F. Supp. 3d 360, 365 (M.D.N.C. 2019) ("North Carolina lower courts and federal courts applying North Carolina law have found that university handbooks, bulletins, guidelines, codes of conduct, manuals, and the like are not

---

[3] Insofar as Plaintiff alleges that Defendant violated the covenant of good faith and fair dealing, *see* [Doc. 1 at ¶ 54 ("Implied in every contract, including those binding on Defendant, is the obligation to execute the contract in good faith and with fair dealing, even in the case of a breach by the other party.")], "a student cannot maintain a breach of contract claim against a university based solely on the implied covenant of 'good faith.'" *Evans v. Columbia Univ.*, No. 14-cv-2658 (NSR), 2015 WL 1730097, at *4 (S.D.N.Y. Apr. 13, 2015).

independently enforceable contracts."); *Doe v. Washington & Lee Univ.*, 439 F. Supp. 3d 784, 792 (W.D. Va. 2020) ("[G]enerally applicable university conduct policies, such as handbooks and sexual assault policies, do not establish a contract under Virginia law."). But notably, Plaintiff does not identify what body of law applies to his breach of contract claim, *see generally* [Doc. 1], nor does Plaintiff cite any legal authority in his Motion suggesting his position as to the applicable state law. *See generally* [Doc. 2]. The Court could locate no choice-of-law provision in the Handbook. *See* [Doc. 1-2].

Because this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, the Court applies the substantive law, including the choice-of-law principles, of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). Colorado law provides that interpretation of an insurance contract is governed "by the law of the state with the most significant relationship to the insurance contract." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009); *see also Wood Bros. Homes v. Walker Adjustment Bureau*, P.2d 1369, 1372 n.3, n.4 (Colo. 1979) (discussing relevant factors in the "most significant relationship" analysis). Relevant factors in this analysis include the place of contracting, the place of the negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, place of incorporation, or place of business of the contracting parties. *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1311 (10th Cir. 2014) (citing Restatement (Second) of Conflict of Laws § 145 (1971)). But absent any argument from Plaintiff, and the undisputed fact that the incident in question occurred outside of the United States, the Court is unable to determine the applicable law with respect to Plaintiff's breach of contract claim, so as to determine whether there is a likelihood of success on his breach of contract claim, let alone any enforceable contract

at all.[4]

Even if this Court were to overlook these legal deficiencies, it would still be faced with an insufficient evidentiary record to conclude that Plaintiff has carried his burden to establish a likelihood of success on the merits. Although it is not bound by the Federal Rules of Evidence at the preliminary injunction stage, *see Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003), this Court notes that the Complaint and the Motion for Temporary Restraining Order were initially filed without verification and without any supporting evidence. *See* [Doc. 1; Doc. 2]. Only after the hearing when this Court raised its concerns about the lack of evidence – as opposed to attorney argument – did Mr. Wells provide his Declaration. [Doc. 12]. He did not provide copies of the two documents that Defendant produced to him as the Record on Appeal. *See* [Doc. 1 at ¶ 29]. Although the term "hearing" was not used, the February 17 letter appears to contradict Mr. Wells's averment that he was never given notice of a hearing. *Compare* [Doc. 1 at ¶ 34] *with* [Doc. 1-3]. Mr. Wells's allegation that he was not informed of the allegations made against him also appears contradicted by the February 18 letter that memorialized the following: "[w]hen we met you admitted that, as a result of alcohol use and nicotine withdraw, you mistreated and spoke inappropriately to several members of the SAS staff, ship security team, and medical staff. While you don't remember every interaction, we discussed that your actions were verbally abusive." [Doc. 1-4 at 1]. To be clear, this Court does not give greater weight to these statements than those of Mr. Wells's in the verified Complaint or Motion for Temporary Restraining Order.

---

[4] This Court notes that "[w]hen more than one state's law may be applicable to a claim or issue, a court need not choose which body of law to apply unless there is an outcome determinative conflict between the potentially applicable bodies of law." *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1264 (D. Colo. 2012). But because there is no indication whatsoever of the body of law that could govern Plaintiff's claim, the Court is simply unable to determine whether there could be any outcome determinative conflict that would require a choice-of-law analysis.

"But to qualify for the extraordinary remedy that is a temporary restraining order, a plaintiff must not merely allege wrongdoing, but must also actually *establish, through evidence, that* [*he*] *is likely to prevail on the merits of one or more of her claims.*" *Sefton v. Am. Broker Conduit*, No. 2:10-cv-00961-RLH-PAL, 2010 WL 2595290, at *2 (D. Nev. June 29, 2010) (emphasis added). Based on the evidentiary record before it, this Court concludes that Plaintiff has not done so. For these reasons, the Court cannot conclude that Plaintiff has met his heightened burden of demonstrating a likelihood of success on the merits on his breach of contract claim.

***Defamation***. The Court also concludes that Plaintiff has not established a likelihood of success on his defamation claim. Again, Plaintiff does not identify which body of law his claim arises under, *see* [Doc. 1], which hinders this Court's analysis. The Court notes, however, that in multiple jurisdictions, defamation claims require publication of the allegedly defamatory statements to a third party. *See, e.g.*, *Wilson v. Meyer*, 126 P.3d 276, 281 (Colo. App. 2005) ("To establish liability for defamation, a plaintiff must show that the defendant published or caused to be published" a defamatory statement." (quotation omitted)); *Page v. Oath Inc.*, 270 A.3d 833, 842 (Del. 2022) ("To state a claim for defamation under Delaware law, the plaintiff must plead and ultimately prove that . . . the [defamatory] statement was published" (quotation omitted)); *Erdmann v. SF Broad. of Green Bay, Inc.*, 599 N.W.2d 1, 5 (Wis. Ct. App. 1999) ("The elements of a common law defamation claim [include] . . . an unprivileged publication to a third party").[5] Importantly, Plaintiff does not allege that any defamatory statements have been published to a third party. He alleges that "Defendant published statements in Plaintiff's academic record stating that he" engaged in abusive conduct, [Doc. 1 at ¶ 66], but he does not affirmatively allege that

---

[5] The Court takes this small sampling of cases from the jurisdictions of the forum state and each Party's state of citizenship. In so doing, the Court does not pass on what substantive law governs Plaintiff's claims, as the issue is not before the Court.

Defendant has publicized these statements to any third parties or that any third parties have access to Plaintiff's academic record.  *See generally* [*id.*].

Moreover, Plaintiff alleges that "Defendant has threatened and intends to publish these false and defamatory statements to the Colorado State University and to Plaintiff's home university where he has been accepted to the graduate accounting program to pursue his master's [degree] in accounting."  [*Id.* at ¶ 67].  He thus seeks to restrain Defendant from "publishing or making any statements that Plaintiff engaged in Abusive Behavior, Disruptive Behavior, a Failure to Comply, or descriptions using similar derogatory terms."  [Doc. 2 at 4].  Courts have concluded that enjoining future defamation amounts to a "prior restraint violative of the First Amendment." *SNA, Inc. v. Array*, 51 F. Supp. 2d 542, 547 n.3 (E.D. Pa. 1999).  *See, e.g.*, *Puello v. Crown Heights Shmira, Inc.*, No. CIV.A. 3:14-0959, 2014 WL 3115156, at *5 (M.D. Pa. July 7, 2014) (denying motion for injunctive relief "because it [was] barred by the common law rule prohibiting injunctions against future defamatory speech" and "request[ed] an unconstitutional prior restraint on the exercise of free speech"); *Vickland v. Am. Royal Ass'n, Inc.*, No. 08-0758-cv-W-DGK, 2008 WL 4748184, at *9 (W.D. Mo. Oct. 23, 2008) ("A decision by the Court to enjoin Defendants from making certain statements will, by definition, act as a governmental prior restraint on Defendants' First Amendment right to free speech.").  "When a prior restraint takes the form of a court-issued injunction, the risk of infringement on the right to free speech increases. . . . Consequently injunctions are not ordinarily appropriate to prevent defamation or libel, except in extraordinary circumstances."  *Vickland*, WL 4748184, at *9.  Plaintiff does not argue that such extraordinary circumstances are present here, and the Court cannot conclude that Plaintiff's requested prior restraint would be an appropriate form of relief in this case.  Accordingly, Plaintiff has not met his burden to demonstrate a likelihood of success on the merits of his defamation

claim.

In sum, Plaintiff has not established a likelihood of success on the merits of either claim, which weighs significantly against issuing a temporary restraining order, given Plaintiff's burden to "satisfy a heightened standard" on this factor. *Colorado v. E.P.A.*, 989 F.3d at 883; *Vill. of Logan*, 577 F. App'x at 766.

**III.   The Public Interest**

In assessing a request for injunctive relief, courts also consider whether injunctive relief would be in the public interest. *Petrella*, 787 F.3d 1257. In the Motion for Temporary Restraining Order, Plaintiff argues that an injunction "would not be adverse to the public interest" because this case involves a dispute between the two Parties in this case and "the issues in this case are of no concern to the general public." [Doc. 2 at 4]. Defendant counters that the public interest "promotes [its] ability to maintain safe and orderly conditions onboard its vessel abroad." [Doc. 11 at 4].

While "the public has an interest in assuring that private institutions comport with general notions of procedural fair play," there is "also a public interest in providing an educational environment that is free from harassment."[6] *Pierre v. Univ. of Dayton*, 143 F. Supp. 3d 703, 714 (S.D. Ohio 2015). "Colleges and universities are afforded great latitude in administering their rules and regulations as courts recognize that those institutions' primary responsibility is to provide an atmosphere conducive to study and learning for all students." *Id.*; *see also Bray*, 540 F. Supp. 3d at 103 ("[C]olleges and universities . . . have a duty to protect their students including through

---

[6] The decision dismissing Plaintiff from the Semester at Sea program states that "[w]hen we met you admitted that, as a result of alcohol use and nicotine withdrawal, you mistreated and spoke inappropriately to several members of the [Semester at Sea] staff, ship security team, and medical staff. While you don't remember every interaction, we discussed that your actions were verbally abusive." [Doc. 1-4 at 1]. The Court does not pass on this evidence or assume the truth in this statement, but simply notes the contents of the letter in light of the limited evidentiary record before the Court.

disciplinary proceedings."). Because Plaintiff has not specifically explained why an injunction is *in* the public interest, as opposed to whether it "*would not be adverse to*" the public interest, the Court agrees that this factor weighs against issuing injunctive relief. *Pierre*, 143 F. Supp. 2d at 714.

**IV.   Rule 65(c)**

Finally, the Court notes that Rule 65 provides that a court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiff does not mention this security requirement in his Motion. *See generally* [Doc. 2]. A trial court has "wide discretion under Rule 65(c) in determining whether to require security," *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003), and "[c]ourts may exercise their discretion to determine no bond is necessary." *Paparazzi, LLC v. Sorenson*, No. 4:22-cv-00028-DN, 2022 WL 1606559, at *4 (D. Utah May 20, 2022). The Tenth Circuit has instructed that a court may waive the bond requirement "if there is an absence of proof showing a likelihood of harm" from a wrongfully issued injunction. *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987); *Brown v. Callahan*, 979 F. Supp. 1357, 1363 (D. Kan. 1997). Plaintiff has not made such a showing here, and Defendant argued at the hearing that his disruptive behavior poses a risk to both the program and the crew of the ship, which too weighs against granting his Motion. *See Taylor v. Erie Ins. Co.*, No. 3:17-cv-481-HBG, 2018 WL 2770195, at *2 (E.D. Tenn. June 8, 2018) (denying motion for preliminary injunction after noting that the plaintiff failed to address the issue of security, which precluded the court from "properly address[ing] th[e] issue").

In sum, Plaintiff has not demonstrated a likelihood of success on the merits or that an

14

injunction would be in the public interest; accordingly, he has not carried his burden to establish that he is entitled to a temporary restraining order at this juncture. The Court will thus **DENY** the Motion for Temporary Restraining Order.

The Parties are **ORDERED** to <u>jointly</u> contact the undersigned's chambers **on February 24, 2023** at **303.335.2600** to discuss further proceedings in this case. The Court notes that Plaintiff's Motion requests only a temporary restraining order and does not request a preliminary injunction. *See* [Doc. 2]. However, in the interest of judicial economy, the Court will set a preliminary injunction hearing, given Plaintiff's counsel's representation that he intends to file a motion for preliminary injunction, at the Court's earliest convenience. After the preliminary injunction hearing is set, the Court will set an expedited briefing schedule for any forthcoming motion and submission of evidence.

## CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1)  The Motion for Temporary Restraining Order [Doc. 2] is **DENIED**.

DATED: February 23, 2023                          BY THE COURT:

_____
Nina Y. Wang
United States District Judge